United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN SHAPIRO,
Plaintiff,

v.

COUNTY OF SONOMA,
Defendant.

Case No. 26-cv-08825-WHO

**ORDER ON TEMPORARY RESTRAINING ORDER, SCREENING COMPLAINT AND APPLICATION TO PROCEED *IN FORMA PAUPERIS***

Re: Dkt. Nos. 6, 8

Plaintiff Stephen Shapiro ("Shapiro") filed this case alleging that defendant County of Sonoma ("Sonoma") violated the Fair Housing Act and 28 U.S.C. § 1983 by failing to make reasonable accommodations to allow him to continue living in an RV without proper documentation. Shapiro now seeks a temporary restraining order ("TRO") to enjoin a final judgment order entered by a California state judge that would require him to remove the RV from his property as well as to pay civil penalties. He also asks to proceed *in forma pauperis*. *See* Dkt. No. 8.

Shapiro's IFP request is GRANTED. But the deadline to comply with the judgment order is October 12, 2026, so Shapiro has not established the urgency necessary for a TRO. More significantly, he must turn to state court for any relief: federal court abstention is required under *Younger v. Harris*, 401 U.S. 37 (1971). Shapiro's request for a TRO is DENIED. And in screening his complaint under 28 U.S.C. § 1915A, it is clear that *Younger* abstention applies. Moreover, there are currently no plausible allegations under § 1983 or under the Fair Housing Act. His complaint is DISMISSED with leave to amend.

## BACKGROUND

Shapiro alleges that on May 15, 2020, he and his wife purchased eight acres of land in

Healdsburg, California and "moved onto the property in [their] RV." Complaint ("Compl.") [Dkt. No. 1] ¶ 6. The two also fixed up a "small building on the property" into a "temporary tiny home with a loft." *Id.* Shapiro and his wife were evacuated from the property during the August 2020 Walbridge fire. *Id.* Upon return to his property, Shapiro found that the "tiny home and all the belongings inside [were] gone." *Id.*

Between August 2020 and June 2023 Shapiro and his wife were living in their RV on the property. *Id.* ¶¶ 6–7. The two then "started researching how to obtain a permit to stay in [their] RV while [they] built or purchase[d] a new home." *Id.* ¶ 7. On June 5, 2023, Sonoma County code enforcement indicated to Shapiro and his wife that they received a complaint about a "vacant lot being occupied with RV's, vessels and vehicles." *Id.* ¶ 8. Shapiro's wife met with County officials on June 28, 2023, who told her to "move the RV." *Id.* Shapiro admits that he moved the RV, took a photo to make it look like he moved the RV to the other side of his property, then moved it back to its original position. *Id.*

Between June and September 2023, Shapiro received "numerous documents in the mail, including documents titled Civil Penalties Due and Payable, Civil Penalties Due Calculation Sheet, and Notice of Abatement." *Id.* ¶ 9. Shapiro appealed the penalties on September 19, 24, and 28, 2023. *Id.* In their September 24, 2023 letter, Shapiro's wife noted that they were "working with the county to legally have [their] RV on the property [they] own and plan to build upon, per Sonoma County Code § 40C." *Id.* She also noted that Shapiro is "disabled and [that she] work[ed] full time in Marin County, so [she was] trying to work on this as fast as [she could]." *Id.*

A Sonoma County official responded to Shapiro's appeals via voicemail on October 17, 2023—which Shapiro alleges to not have received—and via email on October 31, 2023. *Id.* The October 31 email noted that the Sonoma County code is "very clear that on vacant parcels nothing, to include occupied trailers, can be stored or lived in." *Id.* The email also noted that Shapiro could continue with his appeal but that the "cost of an appeal hearing is paid by the non-prevailing party." *Id.*

Shapiro received two more Notice & Orders on August 15, 2024, which Shapiro appealed

on August 24, 2026. *Id.* ¶ 10. County officials "contacted [Shapiro] numerous times . . . stating [he] had no options and if [he] continued with the appeal it would end up costing [him] a lot of money." *Id.* ¶ 11. Shapiro and his wife also spoke with a Sonoma County official, who stated that they "should just move into a mobile home park, that no one ever won an appeal, and it would end up costing [them] a lot of money." *Id.* Shapiro and his wife eventually withdrew their appeal on November 10, 2024. *Id.*

On November 10, 2024, Shapiro and his wife received a stipulated settlement agreement from Sonoma County. *Id.* ¶ 12. One provision of the Agreement required Shapiro and his wife to pay $3,920 in civil penalties to the County, "a significant reduction from the current assessed penalty amount of $21,328.00." *Id.* Shapiro responded to the Agreement on November 27, 2024, noting that they would be "applying for reasonable accommodations due to Stephen Shapiro being 100% disabled and currently receiving Social Security Disability Insurance as his only income," as well as the fact that they did not have "disposable income of almost $4,000.00." *Id.* Shapiro made similar requests for reasonable accommodation under the Fair Housing Act to avoid payment of abatement costs. *Id.* Shapiro "received no response." *Id.*

On November 22, 2024, Sonoma emailed Shapiro with a Notice of Public Hearing set for December 3, 2024. *Id.* ¶ 13. Sonoma warned Shapiro that should he not sign the Agreement by November 27, 2024, the scheduled hearing would proceed. *Id.* Shapiro alleges that he and his wife attempted to attend the hearing "but could not find it on the County website," and that "it appears that no hearing was ever held." *Id.* Accordingly, Shapiro filed another appeal on December 8, 2024, which Sonoma denied. *Id.*

The County filed a complaint in Sonoma County Superior Court on April 11, 2025. *Id.* ¶ 15. Shapiro alleges that he was "inundated with legal documents and correspondence from the County," and that the County repeatedly told them their answers to the complaint and discovery responses were "wrong." *Id.* He then filed a "Motion for Reasonable Accommodation, Stay of Abatement Order, and Alternative Relief Under the Fair Housing Act and American[s] With Disabilities Act." *Id.* ¶ 17.

Trial was held on June 23, 2026. *Id.* ¶ 21. Shapiro alleges that during the trial, "the

County was allowed to use the alleged evidence that was illegally collected during [the County's] June 16, 2026 inspection [of the Property]," which he believed was a "major factor in the court[']s decision." *Id.* The court also expressed opposition to Shapiro's request for accommodations, as it did "not believe" he was disabled. *Id.*

The court entered judgment on August 14, 2026. *Id.* ¶ 24; *see* Proposed Judgment After Trial ("Judgment") [Dkt. No. 6-1]. That judgment required Shapiro and his wife to "cease all occupancy of the parcel and remove the travel trailer from the Property no later than October 12, 2026." Judgment at 4. It also required plaintiffs to pay Sonoma within thirty days "abatement costs of $7,751.00 that accrued up to May 15, 2026," as well as "civil penalties . . . in the amount of $64,174.00." *Id.* at 5.

On August 24, 2026, Shapiro filed this case in the Northern District of California, alleging violations of 28 U.S.C. § 1983 and the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. *See* Compl. at 12–13. That same day, he filed his motion for a temporary restraining order. *See* TRO. He also appears to have appealed his decision from the state court to the California Court of Appeal.

## LEGAL STANDARD

**Temporary Restraining Order**

The standard for issuing a TRO is largely identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Petitioners seeking such relief must establish that (1) they are likely to succeed on the merits; (2) they are "likely to suffer irreparable harm" in the absence of irreparable relief; (3) the "balance of equities tips in [their] favor"; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

Although the substantive standards for both motions are similar, the timeframe for a TRO

is different. While a preliminary injunction remains in effect pending final resolution of the litigation, a TRO "should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). Federal Rule of Civil Procedure 65(b)(1) allows a TRO to be issued without notice to the opposing party—i.e., *ex parte*—only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the "movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

***In Forma Pauperis***

When a district court grants *in forma pauperis* status, the court must screen the complaint and dismiss the action if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 & n.7 (9th Cir. 2000) (screening requirement of § 1915(e) applies to all *in forma pauperis* complaints). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). As such, the complaint must allege facts that plausibly establish each defendant's liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the court must "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the plaintiff." *Watison*, 668 F.3d at 1112 (citation omitted). The court must also "construe a pro se plaintiff's pleadings liberally and afford the petitioner the benefit of any doubt." *Id.* (citation modified). But the court "may not supply essential elements of the claim that were not initially pled." *Pena v.*

*Gardner*, 976 F.2d 469, 471 (9th Cir. 1992), *as amended* (Oct. 9, 1992).

A complaint must also comply with Federal Rule of Civil Procedure 8, which requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The failure to comply with Rule 8 is a basis for dismissal that is not dependent on whether the complaint is without merit. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Accordingly, even claims that are not on their face subject to dismissal under Rule 12(b)(6) may still be dismissed for violating Rule 8(a). *Id.*

## DISCUSSION

### I. *IN FORMA PAUPERIS* APPLICATION

Shapiro requests to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 8. Shapiro notes that he is currently unemployed and receives Social Security disability insurance. *Id.* at 1–2. His wife makes $4,615.00 gross per month ($3,334.00 net per month), and the two have no children. *Id.* at 2–3. Shapiro notes that he owns a home with a mortgage owed of $120,000, though it is unclear whether this value refers to his parcel of land, his trailer, or another piece of property. *Id.* at 3. Shapiro pays $1,100 in rent, $1,000 in utilities, $1,000 for food, and $125 for clothing each month. *Id.* He does not appear to have any debts. *Id.* In light of his income and the impending penalties assessed by the Superior Court, I GRANT Shapiro's IFP application.

### II. TEMPORARY RESTRAINING ORDER

Shapiro's motion for a TRO alleges that he and his wife "face the destruction of their home and nearly $100,000 in fines pursuant to a State Court Judgment (Case No. 25CV02545)." TRO at 3. He indicates that the removal deadline is set for October 12, 2026. *Id.* He requests that I enjoin the County of Sonoma from "proceed[ing] with any orders from the July [Proposed Order After Court Trial dated July 6, 2026." *Id.* at 7.

Shapiro's motion is DENIED. "The issuance of an *ex parte* temporary restraining order is an emergency procedure and is appropriate only when the applicant is in need of *immediate* relief." *Carnero v. EMC Mortgage Corp.*, No. C 09-4696 JF (HRL), 2009 WL 3619316, at *1 (N.D. Cal. Oct. 29, 2009) (Fogel, J.) (emphasis added). Shapiro acknowledges that he is not expected to remove the trailer from his property until October 12, 2026, seven weeks from now.

United States District Court
Northern District of California

This is not a "real and immediate threat" warranting the extraordinary remedy of injunctive relief. *Vasquez Perdomo v. Noem*, 148 F.4th 656, 672 (9th Cir. 2025).

Certainly, Shapiro's September 13, 2026, deadline to pay Sonoma "$99,326.50 in penalties" is looming, and the potential eviction is only a month later. TRO at 4. That is a substantial amount of money to pay and dislocation to suffer, particularly for a person with limited income. But state court, not this court, is the proper venue to seek relief, if any is warranted.

Federal courts should not interfere with state court proceedings. *Younger v. Harris*, 401 U.S. 37 (1971). While "[f]ederal courts have a presumptive, or what is sometimes said to be 'virtually unflagging,' obligation to decide cases within their jurisdiction," *Yelp Inc. v. Paxton*, 137 F.4th 944, 950 (9th Cir. 2025) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)), "*Younger* abstention is an exception to that rule, reflecting a 'national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.'" *Id.* (quoting *Younger*, 401 U.S. at 41). "This doctrine is based on 'a strong federal policy against federal-court interference with pending state judicial proceedings,' and on the recognition that '[c]ourts have long had discretion not to exercise equity jurisdiction when alternatives are available.'" *Id.* (alteration in original) (first quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); then quoting *Gilbertson v. Albright*, 381 F.3d 965, 970 (9th Cir. 2004) (en banc)). "Although *Younger* itself involved criminal proceedings, the abstention doctrine has since 'been extended to prevent federal court injunctions of certain ongoing state civil proceedings.'" *Stockton v. Brown*, 152 F.4th 1124, 1136 (9th Cir. 2025) (quoting *Yelp*, 137 F.4th at 950).

The Supreme Court has recognized that "*Younger* abstention applies to only three categories of state proceedings: (1) 'ongoing state criminal prosecutions'; (2) 'certain civil enforcement proceedings'; and (3) 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 735 (9th Cir. 2020) (quoting *Sprint*, 571 U.S. at 78). While the state court entered a final judgment on August 14, 2026, in the pending case, Shapiro appealed the decision to the California Court of Appeal on August 24, 2026. This case clearly involves

ongoing state civil proceedings. It also involves the enforcement of civil penalties under statutory code akin to criminal enforcement. *See Bristol-Myers Squibb Co.*, 979 F.3d at 738 ("[T]he State seeks civil penalties and punitive damages to sanction the companies for their allegedly deceptive labeling practices. On its face, the action fits comfortably within the class of cases described in *Sprint*, and abstention under *Younger* is warranted.").

Under these principles, *Younger* abstention precludes me from granting the injunctive relief Shapiro requests, even if he is threatened with an irreparable injury.[1] There is no likelihood of success on the merits on his claims given *Younger* abstention. Shapiro's request for a TRO is DENIED.

## III. 28 U.S.C. § 1915 SCREENING

I now turn to screen Shapiro's complaint. Shapiro alleges two causes of action against Sonoma—violation of 42 U.S.C. § 1983 and Section 3617 of the Fair Housing Act. It cannot proceed in federal court for the reasons I have just discussed: *Younger* abstention is required. But it is also worth noting that neither cause of action is adequately pleaded.

### A. 42 U.S.C. § 1983

42 U.S.C. § 1983 reads, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Shapiro alleges that Sonoma violated Section 1983 by "fail[ing] to make reasonable accommodation[s] regarding [his] housing." Compl. at 12. He notes that he will be homeless "if the County does not allow [him] reasonable accommodation to have a house built on

[1] While exceptions to *Younger* abstention exist, none are applicable here. Courts intervene in pending state proceedings only when the "retaliatory motive or harassment [is] sufficiently severe or pervasive to legitimize our halt of state court proceedings in which these same constitutional objections could be raised." *Yelp*, 137 F.4th at 954. Shapiro has not shown that the state court acted in a retaliatory or harassing manner.

[his] property." *Id.*

Shapiro has not plausibly alleged any denial or discriminatory action by Sonoma that would amount to a violation of Section 1983. His complaint notably includes no mention of any action by Sonoma or its officials under respondeat superior that would suggest it denied Shapiro the ability to "have a house built on [his] property." *Id.* Instead, the complaint focuses almost exclusively on the issues relating to his trailer home. Even when construing his complaint liberally, Shapiro has not plausibly alleged any fact that would show that Sonoma or its officials deprived him and his wife of any rights.

**B. Fair Housing Act**

Section 3617 of the Fair Housing Act makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Shapiro alleges that after requesting a "reasonable accommodation" from the County, Sonoma County officials "immediately went to a judge, omitted facts, and received an inspection warrant in order to intimidate and threaten [him]." Compl. at 13. He alleges his harm stems from being "scared and upset having all these people wander all of [his] property," as well as the fact that he will be "homeless if the County is allowed to go through with [the] judgment." *Id.*

The complaint fails to allege sufficient facts concerning the nature and scope of the accommodation requested by Shapiro, why that accommodation was necessary because of his disability, when and how Sonoma was placed on notice of the request, and how the County denied or failed to reasonably accommodate his request. Without such facts, Shapiro's barebones allegations cannot stand.

**CONCLUSION**

Shapiro's request for a temporary restraining order is DENIED, and his complaint as currently pleaded is DISMISSED under 28 U.S.C. § 1915. I am skeptical that Shapiro can state facts that overcome *Younger* abstention, but I will grant leave to amend. Shapiro shall have 20

United States District Court
Northern District of California

days to file an amended complaint that provides enough facts to overcome the abstention issues identified in this Order sustain his claims as well as.

**IT IS SO ORDERED.**

Dated: August 25, 2026

William H. Orrick
United States District Judge